Hillsborough-northern judicial district
No. 95-030

## THE STATE OF NEW HAMPSHIRE

v.

## DIOMEDES JESUS QUEZADA

August 2, 1996

*Jeffrey R. Howard*, attorney general (*Brian R. Graf*, assistant attorney general, on the brief, and *John C. Kissinger, Jr.*, assistant attorney general, orally), for the State.

*David M. Rothstein*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Diomedes Jesus Quezada, was convicted of possession of a controlled substance. *See* RSA 318-B:2 (1995). On appeal, he argues that the Superior Court (*Arnold*, J.) erred in denying his pretrial motion to suppress evidence as the fruit of an illegal seizure. We reverse and remand.

On March 20, 1994, at approximately 1:15 a.m., Manchester Police Officers Shawn Fournier and Jeffrey Czarnac were in a marked police cruiser looking for a suspect who had just committed felony criminal mischief. *See* RSA 634:2 (1986 & Supp. 1995). They saw a man fitting the suspect's description in front of a boarding house on Pine Street. The suspect was talking to another man, later identified as the defendant. From a distance of approximately eight to ten feet, one officer called out to the two men, who then ended their conversation and separated. Without activating their blue lights or siren, the officers alighted from the cruiser. The suspect walked toward the cruiser, and the defendant moved quickly up a set of steps to the front door of the boarding house.

At the suppression hearing, Officer Fournier testified that he called to the defendant, "Hey, you, stop." The officer characterized his tone of voice when he said this as "calm and relaxed," although he also testified that he spoke "loudly" so he would be heard. The defendant did not respond to Fournier's call. The superior court found that the defendant was "apparently unaware that [Officer Fournier] was addressing him." The defendant fumbled with his

keys and attempted to unlock the front door. Officer Fournier then walked to the bottom of the steps and said, "Hey, I want to speak to you." The officer described his tone in making this remark as "like . . . I didn't believe he heard me the first time." The defendant said, "Oh, me, okay." He then turned toward Fournier and walked down the stairs. Shortly after the defendant reached the pavement, Officer Fournier saw a "clear, plastic baggie drop from his person" onto the ground. Believing this baggie contained crack cocaine, the officer retrieved it and subsequently arrested the defendant for possession of a narcotic drug with intent to distribute.

Prior to trial, the defendant moved to suppress the cocaine as the fruit of an illegal seizure. The superior court denied the motion after a hearing and later found the defendant guilty based upon stipulated facts. The defendant now argues that the court erred in ruling that Officer Fournier did not seize him under part I, article 19 of the New Hampshire Constitution and the fourth amendment of the United States Constitution. We address the defendant's claim first under the State Constitution, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), relying on federal cases only as an aid to our analysis, *State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Because we conclude that the defendant was seized illegally under part I, article 19 of the State Constitution, we need not reach the federal issue. *See State v. Koppel*, 127 N.H. 286, 289, 499 A.2d 977, 979–80 (1985).

Part I, article 19 of the New Hampshire Constitution provides that "[e]very subject hath a right to be secure from all unreasonable searches and seizures of his person." For constitutional purposes, a person is considered seized "if, in view of all the circumstances . . . a reasonable person would have believed that he was not free to leave." *State v. Wong*, 138 N.H. 56, 62, 635 A.2d 470, 474 (1993) (quotation omitted). Contained within this analysis "is a determination whether there has been a 'show of authority' such that the liberty of the individual has been restrained." *State v. Riley*, 126 N.H. 257, 262, 490 A.2d 1362, 1366 (1985).

> [C]ircumstances indicating a "show of authority" might include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Id.* (quotation omitted). In reviewing the trial court's ruling, we are mindful that this analysis is an objective one, requiring a determination whether the defendant's "freedom of movement was suffi-

ciently curtailed by considering how a reasonable man in the suspect's position would have understood his situation." *State v. Green*, 133 N.H. 249, 258, 575 A.2d 1308, 1314 (1990) (quotations omitted).

The record indicates that the defendant's situation was as follows. It was 1:15 a.m. No one else was on the street when two uniformed officers alighted from a marked police cruiser and called to the defendant and his companion. Officer Fournier said to the defendant, "Hey, you, stop" — language indicating that compliance was not optional. Though the trial court observed that the defendant was "apparently unaware that [the officer] was addressing him," the defendant apparently *heard* this request, for he responded to Officer Fournier's second hail by saying, "Oh, me, okay." The second hail — "Hey, I want to speak to you" — was made moments after the first, when the officer was a few feet behind the defendant; in conjunction with the first it fairly indicated that compliance was mandatory.

The State maintains that, on these facts, there was no "show of authority" sufficient to effect a seizure because the officers did not display their weapons, touch the defendant, or prevent him from entering the building or walking down the steps. Though we recognize that, as with the fourth amendment, law enforcement officers do not violate part I, article 19 "by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer questions, [or] by putting questions to him if the person is willing to listen," *Riley*, 126 N.H. at 263, 490 A.2d at 1366 (quotation omitted), we are persuaded that in view of all the circumstances in this case, the encounter transcended a mere request to communicate. Given the late hour, the absence of other citizens in the vicinity, the presence of two uniformed police officers, and the language of Officer Fournier's requests, no reasonable person would have believed he was free to ignore the officer and simply walk away. *See State v. Oquendo*, 613 A.2d 1300, 1310–11 (Conn. 1992).

The State does not argue that seizure of the defendant was supported by probable cause or reasonable articulable suspicion. The State does contend in its brief, however, that the cocaine was legally seized because it was in plain view or, in the alternative, because it was abandoned. Because these issues may arise upon remand and have not been addressed by the trial court, we do not consider them.

*Reversed and remanded.*

THAYER, J., with whom HORTON, J., joined, dissented; the others concurred.

THAYER, J., dissenting: I respectfully dissent from the majority's holding that the defendant was seized for purposes of part I, article 19 of the New Hampshire Constitution.

In *State v. Riley*, 126 N.H. 257, 262, 490 A.2d 1362, 1366 (1985), we adopted the federal standard announced by the United States Supreme Court in *United States v. Mendenhall*, 446 U.S. 544 (1980), for determining whether a seizure has occurred under the State Constitution. As the majority acknowledges, this standard requires an analysis of whether "in view of all the circumstances . . . a reasonable person would have believed that he was not free to leave," *State v. Wong*, 138 N.H. 56, 62, 635 A.2d 470, 474 (1993) (quotation omitted), which in turn requires "a determination whether there has been a 'show of authority' such that the liberty of the individual has been restrained." *Riley*, 126 N.H. at 262, 490 A.2d at 1366. In *Riley*, we cited as factors tending to indicate a show of authority "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* (quotation omitted). Because these and other factors that might indicate a show of authority are lacking in the case before us, I would conclude that the defendant was not seized for purposes of part I, article 19.

Here the only other officer at the scene was occupied with the suspect, not the defendant. Officer Fournier never displayed a weapon and did not touch the defendant. He spoke in a "calm and relaxed" voice. He never approached beyond the first step of the stairs. When Fournier said, "Hey, you, stop," the defendant, as the trial court found, was "apparently unaware" that he was being addressed. The majority assumes that the defendant heard this remark but chose to ignore it. In my opinion, the record indicates that the defendant did not hear the remark. The only statement by Fournier that the defendant knew was addressed to him was, "Hey, I want to speak to you." This simple request to communicate was not, under the standard adopted by this court in *Riley*, sufficient to constitute a seizure for purposes of part I, article 19. As the United States Supreme Court has said with regard to the Federal Constitution, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer questions, [or] by putting questions to him if the person is willing to listen . . . ." *Florida v. Royer*, 460 U.S. 491, 497 (1983); *see Riley*, 126 N.H. at 263, 490 A.2d at 1366.

Even if I were to assume, as the majority does, that the defendant heard Fournier say, "Hey, you, stop," I would still conclude that no seizure occurred. The trial court characterized Fournier's statement as a "request to speak with the defendant" and found that the two officers "merely called out to the defendant and [the suspect] to attract their attention in order to ask them some questions." Given these findings, which are supported by the record, and the fact that Fournier spoke in a "calm and relaxed" voice, did not display a weapon, and never touched the defendant, I cannot say that "a reasonable person would have believed that he was not free to leave." *Wong*, 138 N.H. at 62, 635 A.2d at 474 (quotation omitted). Consequently, I would affirm the trial court's denial of the defendant's motion to suppress.

HORTON, J., joins in the dissent.